

# THE ATTORNEY GENERAL

## OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2146
Re: (1) Taxability of prizes under
Art. 7047f given away at a horse
show; (2) Admissions to a horse
show under Art. 7047a-19, V.A.C.S.

We received your letter dated March 28, 1940, requesting our opinion on several questions based upon the facts contained in a letter from the Program Chairman of the Dallas Spring Horse Show. We quote from your letter as follows:

"A charity horse show was held in Dallas recently for the purpose of raising funds for a Finnish Relief Fund. Admissions of $1.00 per person were collected and prizes amounting to $10,000.00 were given to the owners of the winning horses entered in the various classes of entries. An automobile was given away by means of a drawing contest.

"I am attaching a letter from the Chairman of the Program Committee of the horse show which explains in detail the manner of conducting the show and the methods used in awarding the prizes."

We quote from the enclosed letter written by Mr. P. M. Greenwood, and addressed to you, as follows:

"Replying to your letter of March 20 to the best of my knowledge the Charity Horse Show was operated as follows:

"First prizes of $10,000 were set up for the winners of the various classes, it being necessary to give cash prizes in order to attrach entries and insure the success of the show. In addition to these cash prizes, various trophies were given, all of which were donated by people interested in the show and its success.

"Admission to the show was charged on the basis of $1.00 per person for each performance. In addition season boxes were sold, of which I believe there were one hundred, those boxes selling at $100.00 -- some few at $50.00.

"The Committee in charge anticipated that the receipts from the sale of boxes, and the entrace fees received, and stall rents from those entering horses, would be more than enough money to provide for the cash prizes and for the necessary expenses. Profit from the Show was expected to be derived from the general ticket sale, from concessions, and from Souvenir Programs.

"Most of the beverage houses, candy distributors, and other people donated their merchandise to the Show in order to swell the net receipts from the concessions standpoint.

"The Souvenir Program, which is a feature of every Horse Show, inasmuch as it is necessary for the spectators to have a program in order to follow the performances, was financed by the sale of advertising space, and as you know most purchasers of space looked on it as a contribution rather than as commercial advertising.

"In order to swell the sale of the programs themselves, and they were sold at 25¢ each, it was suggested that we get a group of men to give us the money to buy the automobile, which was done; and the automobile was then purchased at cost or approximate cost. On each program was a coupon which entitled the holder to a chance at the automobile, and all coupons were deposited in a receptacle and one drawn therefrom, the owner of that coupon being the recipient of the automobile.

"You understand, of course, that all proceeds, above expenses as set out herein, were for the benefit of the Finnish Relief Fund. It was not required that the winner should be present at the drawing, and in fact it was not required that he be present at any performance of the Show, therefore he was not required to buy any admission ticket to the Show, but paid 25 cents for program."

Based upon the above stated facts, you request our opinion on the following questions:

1. Is the automobile, given away in connection with the Dallas Spring Horse Show, subject to the 20% award tax levied by Article 7047f, V.A.C.S.?

2. Are the prizes, given to the owners of the winning horses, subject to the 20% awaer tax levied by Article 7047f, supra?

3. Are the admission charges subject to the admission tax levied by Article 7047a-19, V.A.C.S.?

Article 7047f, reads in part as follows:

"(a) Every person, firm, or corporation conducting a theatre, place of amusement, or any business enterprise in connection with the operation of which a prize in the form of money or something of value is offered or given to one or more patrons of such theatre, place of amusement, or business enterprize, and not given to all patrons thereof paying the same charge for any certain service, commodity, or entertainment, shall make a verified monthly report on the twenty-fifth day of each month to the Comptroller of Public Accounts of the State of Texas, showing the amount of money so given in prizes, and the value of all prizes or awards so given in connection with such business during the next preceding month.

"(b) There is hereby levied a tax equal to twenty per cent (20%) of the value of all such money, prizes, and awards given in connection with the operation of each and all of the foregoing business enterprizes, and at the time of making the report to the Comptroller of Public Accounts, the owner or operator of any such business shall pay to the State Treasurer such tax upon the total amount of money, prizes, and awards so given during the next preceding month. . . ."

This Department has held that the operation of a theatre or a place of amusement must be operated as a "business enterprise" in order for the prize to be taxable under the statute in question. Our Opinion No. O-1689. It appears from the heretofore mentioned facts that the horse show was operated, not as a business enterprise, but as a benevolent or charitable enterprise. We conclude, therefore, that neither the Dallas Spring Horse Show, its members nor its officers are liable for the 20% award tax on the automobile.

In answer to your second question, we are of the opinion that the prizes or awards given to the owners of the winning horses are not subject to the 20% award tax for the reason that the horse show was not conducted as a "business enterprise" as that term is used in Article 7047f, supra, and for the further reason that the persons who were awarded the prizes and awards were not "patrons thereof paying the same charge for any certain service, commodity, or entertainment" within the meaning of the above article. See Conference Opinion No. 3025.

In answer to your third question, we are of the opinion that you correctly advised the officers or members of the Dallas Horse Show that the admission tax is not applicable to the admissions collected for the reasons set out in our Opinion No. O-820.

We trust that this is the information desired.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Glenn R. Lewis

Glenn R. Lewis
Assistant

LS:ew:egw

By /s/ Lee Shoptaw

APPROVED APRI 19, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS